# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL NO. 3:09CV24-RJC-DSC

| | |
|---|---|
| CEDRIC MONROE,  )<br>      Plaintiff,  )<br>　　　　　　　　　　)<br>  vs.　　　　　　　　)<br>　　　　　　　　　　)<br>MICHAEL J. ASTRUE,  )<br>Commissioner of Social  )<br>Security Administration,  )<br>      Defendant.　　　 )<br>　　　　　　　　　　) | **MEMORANDUM AND RECOMMENDATION<br>AND ORDER** |

**THIS MATTER** is before the Court on Plaintiff's "Motion for Summary Judgment and Motion to Expand the Record" (document #11) and "Memorandum in Support ..." (document #12), both filed June 26, 2009; and Defendant's "Motion For Summary Judgment ..." (document #13) and "Memorandum in Support of the Commissioner's Decision" (document #14), both filed August 24, 2009. This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and these motions are now ripe for disposition.

Having considered the written arguments, administrative record, and applicable authority, the undersigned finds that Defendant's decision to deny Plaintiff Social Security disability benefits is <u>not</u> supported by substantial evidence. Accordingly, the undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment be <u>granted</u>; that Defendant's Motion for Summary Judgment be <u>denied</u>; that the Commissioner's decision be <u>reversed</u>, and that this matter be <u>remanded</u> for further proceedings consistent with this Memorandum and Recommendation.

## I. PROCEDURAL HISTORY

On December 9, 2004, Plaintiff applied for Supplemental Security Income ("SSI") disability

benefits as the result of injuries he had suffered in a motor vehicle accident on November 29, 2004 (Tr. 48-49, 58-59). Plaintiff's claim was denied initially and on reconsideration.

Plaintiff requested a hearing, which was held on April 10, 2008. On June 20, 2008, the Administrative Law Judge ("ALJ") issued a decision denying Plaintiff's claim, finding that Plaintiff had not engaged in substantial gainful activity since his alleged onset date; that Plaintiff suffered from a brachial plexus injury to his left upper extremity which was a severe impairment within the meaning of the regulations, but did not meet or equal any listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1; that Plaintiff retained the Residual Functional Capacity ("RFC")[1] to perform light[2] work that did not require use of the left upper extremity for lifting, grasping, or manipulation except as a "helper" for the dominant right upper extremity; and that considering Plaintiff's age, education and work experience, if Plaintiff had possessed the RFC to perform the full range of light work, Medical-Vocational Rule 202.20 would have dictated a finding of not disabled.

Because Plaintiff does not retain the RFC to perform the full range of light work, the ALJ then correctly shifted the burden to Defendant to show the existence of other jobs in the national economy which Plaintiff nevertheless could have performed. The ALJ took testimony from a

---

[1] The Social Security Regulations define "residual functional capacity" as "what [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] residual functional capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b).

[2] "Light" work is defined in 20 C.F.R. § 404.1567(b) as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

Vocational Expert ("V.E."), presenting her with a hypothetical that factored in the above limitations.

In response to the hypothetical, the V.E. identified three jobs, along with their listings in the *Dictionary of Occupational Titles* ("*DOT*"), that she believed Plaintiff could perform: information clerk (*DOT* #237.367-018) (1700 jobs available in North Carolina); bakery worker (*DOT* #524.687-022) (1700 jobs available in North Carolina) and laminating-machine offbearer (*DOT* #569.667-046) (6300 jobs available in North Carolina). (Tr. 310-311).

The ALJ then posed the following question to the V.E.: "[i]s there anything you said, Ms. Carlton, that's inconsistent with what's set forth in the *Dictionary of Occupational Titles*?" to which the V.E. replied, "[n]o, Your Honor" (Tr. 311). Accordingly, the ALJ concluded that the Vocational Expert's testimony was substantial evidence that there were a significant number of jobs in the national economy that Plaintiff could perform and that, therefore, he was not disabled.

Plaintiff filed a timely Request for Review of Hearing Decision. On November 12, 2008, the Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner.

Plaintiff filed this action on January 16, 2009 . On appeal, Plaintiff primarily contends that the ALJ improperly relied on the V.E.'s testimony because there is an unresolved conflict between her testimony and the *DOT*'s definitions of the jobs she identified. See Plaintiff's "Memorandum in Support ..." at 6-10 (document #12).[3] The parties' cross-motions for summary judgment are ripe for disposition.

---

[3]Plaintiff also assigns error to the ALJ's determination that his impairment did not equal or meet Listing 1.08, which essentially involves the question of whether or not Plaintiff was, at the time of the hearing, a candidate for tendon transfer surgery. Plaintiff also contends that the record on this appeal should be expanded to include Plaintiff's 2009 surgical records, noted below. Because this matter must be remanded for a new hearing in any event, these issues are moot.

## II. FACTUAL BACKGROUND

Relevant to the dispositive issue raised on appeal, the undisputed medical records show that on November 29, 2004, Plaintiff was taken by ambulance to the emergency room at Carolinas Medical Center after being involved in a motor vehicle accident in which he sustained a T-7 vertebral-body fracture, subarachnoid hemorrhage, bilateral pulmonary contusions, left hemothorax with a left rib fracture, an eye laceration, fracture of both bones (ulna and radius) in the left forearm and inability to move his fingers of the left hand (Tr. 139, 142). During his admission, Plaintiff underwent an open reduction and internal fixation of the left radial and ulnar fractures (Tr. 145). On December 4, 2004, Plaintiff was discharged from inpatient care with a back brace and follow up appointments for orthopedic, neurosurgical, and physical therapy assessments (Tr. 140).

The fractures in Plaintiffs back and arm eventually healed. However, he had also sustained a brachial plexus injury from the accident that left him with limited use of his left arm and hand. Follow-up visits at CMC Myers Park Orthopedics on January 19, 2005 and March 2, 2005 continued to show minimal movement in his left hand and wrist and decreased sensation in his ulnar distribution (Tr. 185-189).

On March 8, 2005, Parag Phadke, M.D. at CMC Myers Park Orthopedics recommended nerve conduction studies to further evaluate the brachial plexus injury and possible surgical nerve repair or tendon transfer (Tr. 191). This test showed "electrophysiological evidence of wide-spread denervation in multiple left cervical myotomes. ... These findings are suspicious for multiple lesions of the C6-T1 spinal roots and less likely a process affecting the middle and lower trunks of the brachial plexus" (Tr. 256-259).

On June 21, 2005, Dr. Phadke recommended an MRI and noted that Plaintiff's nerve injury

likely could not be repaired and that he would need tendon transfers after it was determined he had clinically plateaued (Tr. 193).

On July 19, 2005, Plaintiff saw James Boatright, M.D., an orthopedic hand surgeon at CMC Myers Park Orthopedics.. Dr. Boatright noted only about 3/5 strength in the wrist, inability to extend the thumb, and no active finger extension with his wrist in the extended position (Tr. 199). Dr. Boatright noted that the MRI showed atrophy of multiple muscle groups throughout the brachial plexus and high suspicion of avulsion injuries of the lower cervical nerve roots (Tr. 199). Dr. Boatright referred Plaintiff to Dr. Alan Ward regarding possible tendon transfer surgery. Id.

In August 2005, Plaintiff underwent additional occupational therapy prescribed for his left hand and fingers (Tr. 198, 253).

On September 15, 2005, a nurse practitioner at CMC Myers Park Orthopedics wrote a note for Plaintiff stating: "[patient] is pending surgery for tendon transfers due to ... [left upper extremity] brachial plexopathy - he is unable to work using that arm at present. Length of time until return to work is unknown" (Tr. 206).

On March 9, 2005, Plaintiff lost his Medicaid coverage when he reached age 21 and was unable to have the pending tendon transfer surgery (Tr. 298-299).[4]

Concerning the V.E.'s testimony, as Plaintiff points out correctly in his brief, although the V.E. stated that her testimony was consistent with the *DOT*, there is an apparent conflict between the jobs she identified and the requirements of those jobs as stated in the *DOT*. The jobs the V.E. cited appear to exceed the limitations in the hypothetical of no lifting, grasping or manipulation by

---

[4]Although not material to the disposition of the parties' present Motions, the undersigned does note that after Plaintiff's Medicaid benefits were reinstated, on February 10, 2009 he underwent tendon transfer surgery. See "Attachment A" to Plaintiff's "Memorandum in Support ..." (document #12).

the left upper extremity, which can be used only as a helper.

For example, per the *DOT*, the job of information clerk requires frequent reaching of the hands and arms, frequent handling and occasional fingering, distributing travel literature and timetables, and consulting rate tables. Similarly, the job of bakery worker requires working on a conveyer line with occasional reaching for and occasional handling and manipulating of cakes, which Plaintiff contends could not be done with a single hand without crushing the cake. Finally, the job of laminating machine off bearer requires working on a conveyor occasionally reaching, handling and fingering to manipulate laminated panels. These panels could weigh up to 20 pounds, which Plaintiff argues would be difficult to maneuver with one hand because of the large flat dimensions.

In response, Defendant contends that each of these jobs, that is, the fingering, manipulating, and maneuvering required, could be performed one-handed.

### III. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The district court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if

supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

The Fourth Circuit has long emphasized that it is not for a reviewing court to re-weigh the evidence, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays, 907 F.2d at 1456; see also Smith v. Schweiker, 795 F.2d at 345; and Blalock v. Richardson, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## IV. DISCUSSION OF CLAIM

The question before the ALJ was whether at any time Plaintiff became "disabled" as that term of art is defined for Social Security purposes.[5] Social Security Ruling 00-4p sets forth standards in the use of vocational experts. The Ruling contains specific provisions regarding conflicts as follows:

---

[5]Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:
  inability to engage in any substantial gainful activity by reason of any medically determinable physical
  or mental impairment which can be expected to result in death or which has lasted or can be expected
  to last for a continuous period of not less than 12 months . . . .
Pass v. Chater, 65 F. 3d 1200, 1203 (4th Cir. 1995).

7

> Occupational evidence provided by a vocational expert or VS generally should be consistent with the occupational information supplied by the *DOT*. When there is an apparent unresolved conflict between vocational expert or VS evidence and the *DOT*, the adjudicator must elicit a reasonable explanation for the conflict before relying on the vocational expert or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

Social Security Ruling 00-4p, *4-5. The Ruling continues:

> **The Responsibility To Ask About Conflicts**
> When a vocational expert or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that vocational expert or VS evidence and information provided in the DOT. In these situations, the adjudicator will:
>
> Ask the vocational expert or VS if the evidence he or she has provided conflicts with information provided in the *DOT*; and
>
> If the vocational expert's or VS's evidence appears to conflict with the *DOT*, the adjudicator will obtain a reasonable explanation for the apparent conflict.
>
> **Explaining the Resolution**
> When vocational evidence provided by a vocational expert or VS is not consistent with information in the *DOT*, the adjudicator must resolve this conflict before relying on the vocational expert or VS evidence to support a determination or decision that the individual is or is not disabled. The adjudicator will explain in the determination or decision how he or she resolved the conflict. The adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified.

Social Security Ruling 00-4p, *8-9.

In Dickerson v. Astrue, 2008 U.S. Dist Lexis 48108 (W..D. Va. 2008), the district court addressed the issue presented here. The ALJ did ask the V.E. whether there was any deviation of his testimony from the *DOT*, but the vocational expert did not explain the potential inconsistencies between his testimony and the *DOT*. Id. at *22. The court held that it is not enough that the Commissioner offered a possible explanation for the discrepancy on appeal. It is the ALJ's duty to

elicit a reasonable explanation from the V.E. for the inconsistencies, and failure to do so renders judicial review impossible. Id. at *24. See also Davis v. Astrue, 2008 U.S. Dist. LEXIS 58072 (W.D. Va. 2008) (remand required because Administrative Law Judge did not identify or explain conflicts between vocational expert's testimony and the *DOT*).

In other words, when a V.E.'s testimony is based on a misunderstanding or misstatement of *DOT* criteria, then an ALJ's decision based on that testimony cannot be supported by substantial evidence. English v. Shalala, 10 F.3d 1080, 1085 (4th Cir. 1993) (ALJ erred in relying on testimony of a vocational expert who used an outdated version of the *DOT*): Oxendine v. Halter, 181 F. Supp. 2d 570, 574 (E.D.N.C. 2001) (remand necessary where V.E.'s testimony conflicted with *DOT*).

Applying these principles to the record in this case, it is clear that the matter must be remanded for a new hearing. Although each party speculates as to what the V.E. would have said had she been questioned about the apparent conflict, it is clear that the ALJ had the responsibility for developing the factual record. SSR 00-4p; Dickerson, 2008 U.S. Dist Lexis 48108, at *22-24 (not enough for Commissioner to offer on appeal possible explanation for discrepancy, it is ALJ's duty to elicit reasonable explanation from V.E., failure to do so renders judicial review impossible); Davis, 2008 U.S. Dist. LEXIS 58072 (remand required because Administrative Law Judge did not identify or explain conflicts between vocational expert's testimony and *DOT*). Moreover, as discussed above, it is not the place of a reviewing court to reconsider the evidence, specifically in this instance, to engage in its own speculation concerning vocational evidence. See Hays, 907 F.2d at 1456.

Accordingly, having failed to fully resolve the inconsistency between the V.E.'s testimony and the DOT, the ALJ's finding that there were a significant number of jobs in the national

economy that Plaintiff could perform is not supported by substantial evidence. At the next hearing, among any other issues that require further development, the ALJ should more fully develop the vocational record and resolve the inconsistencies discussed above.

## V. ORDER

**IT IS ORDERED** that Plaintiff's "Motion to Expand the Record" (document #11) is **DENIED AS MOOT.**

## VI. RECOMMENDATIONS

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Plaintiff's "Motion For Summary Judgment" (document #11) be **GRANTED**; that Defendant's "Motion for Summary Judgment" (document #13) be **DENIED**; that the Commissioner's decision be **REVERSED**; and this matter be **REMANDED** for a new hearing pursuant to Sentence Four of 42 U.S.C. § 405(g).[6]

## VII. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within ten (10) days after service of same. Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989); United States v. Rice, 741 F. Supp. 101, 102 (W.D.N.C. 1990). Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Court.

---

[6] Sentence Four authorizes "a judgment affirming, modifying, or reversing the decision ... with or without remanding the cause for a rehearing." Sullivan v. Finkelstein, 496 U.S. 617, 625 (1990).

Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder, 889 F.2d at 1365.  Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal.  Diamond, 416 F.3d at 316; Wells, 109 F.3d at 201; Page, 337 F.3d at 416 n.3; Thomas v. Arn, 474 U.S. 140, 147 (1985); Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation and Order to counsel for the parties; and to the Honorable Robert J. Conrad, Jr.

**SO RECOMMENDED AND ORDERED.**

Signed: August 25, 2009

David S. Cayer
United States Magistrate Judge